NO. 07-00-0546-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

NOVEMBER 1, 2001

_____

IN THE MATTER OF THE MARRIAGE OF M.C. AND R.S.
AND IN THE INTEREST OF J.C. AND C.C., MINOR CHILDREN

_____

FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2000-508,902; HONORABLE MACKEY HANCOCK, JUDGE

_____

Before QUINN and REAVIS and JOHNSON, JJ.

Appellant Mona C. appeals from a divorce decree which established the parent-child relationship between appellee Randall S. and two children born during the marriage between Mona and Randall. Mona urges via four issues that the trial court erred in refusing to allow her to present evidence contesting Randall's claim of parental status to the two children. We reverse and remand.

## I. BACKGROUND

On July 4, 1999, Mona and Randall were married. They ceased living together as husband and wife in December, 1999. On January 28, 2000, Mona gave birth to twin boys. On February 1, 2000, she filed a petition for divorce. In the petition Mona denied that Randall was the father of the twins. Randall filed an answer, counterclaimed for divorce, included a suit affecting the parent-child relationship and claimed that Mona and he "are the parents of the following [children] of the marriage . . .," naming the twin boys. Mona's trial pleading contained a statement expressly denying that Randall was the father of the children and attached copies of DNA Parentage Test Reports which showed the probability of Randall being the father of either child as zero percent.

The trial court tried the matter without a jury on August 31, 2000. On October 31, 2000, the trial court signed a decree terminating the marriage, dividing the marital estate, determining that Mona and Randall were parents of the twins, and providing for conservatorship, visitation and child support. The decree contained a finding that no written consent to artificial insemination was given by Randall pursuant to Section 151.101 of the Texas Family Code;[1] but that Randall filed an answer and counterclaim which constituted ratification of the artificial insemination and constituted consent.

All four of Mona's issues on appeal relate to the trial court's refusal to allow her to challenge Randall's claim to parental status as to the twins. Issue one asserts error by the

---

[1]TEX. FAM. CODE ANN. § 151.101 (Vernon 1996). Further references to particular sections or provisions of the Family Code will be by reference to the "Family Code," or "Section_."

2

trial court in not allowing evidence as to Randall's consent to the artificial insemination, his participation in the insemination process, or his acts in support of the procedure. Mona asserts that the rulings deprived her of the opportunity to contest Randall's ratification of the artificial insemination. Issue two urges that the trial court erred in failing to order paternity testing and in failing to conduct a pretrial hearing on the issue of paternity in accordance with provisions of the Texas Family Code. Issue three alleges error in the trial court's refusal to admit evidence on the issue of paternity during the trial on the merits. Issue four claims error in the trial court's finding that Randall ratified the artificial insemination when the trial court refused to admit evidence challenging such ratification. The matters urged by issues one, three and four are similar. We determine that Mona's third issue is dispositive of the appeal and only address it. See TEX. R. APP. P. 47.1.

## II. ISSUE THREE: EXCLUSION OF EVIDENCE
## CHALLENGING APPELLEE'S PARENTAGE

By her third issue, Mona urges that the trial court abused its discretion in refusing to admit evidence on the issue of Randall's paternity at the hearing on the merits. She urges that refusal to admit such evidence probably resulted in the rendition of an improper judgment. In the alternative, she asserts that the trial court's refusal to hear evidence as to Randall's paternity and as to whether he consented to assisted conception of the children prevents her from properly presenting her case on appeal. Randall responds by asserting that the evidence in question was not relevant nor was it admissible because the trial court determined that Randall did not consent to assisted conception. Furthermore,

3

Randall urges, Mona has not shown that exclusion of the evidence resulted in entry of an improper judgment.

## A. Standard of Review

Trial court rulings admitting or excluding evidence are reviewed using an abuse of discretion standard. See City of Brownsville v. Alvarado, 897 S.W.2d 750, 754 (Tex. 1995). A trial court abuses its discretion by arriving at its choice in violation of an applicable legal rule, principle, or criterion, or by making a choice that is legally unreasonable in the factual-legal context in which it is made. See Landon v. Jean-Paul Budinger, Inc., 724 S.W.2d 931, 939-40 (Tex.App.--Austin 1987, no writ).

Reversal of a judgment for an error in the admission or exclusion or admission of evidence is warranted if the error probably caused the rendition of an improper judgment, or probably prevented the appellant from properly presenting the case to the court of appeals. TEX. R. APP. P. 44.1. A successful challenge to evidentiary rulings usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted. See Alvarado, 897 S.W.2d at 754.

## B. Law

A suit affecting the parent-child relationship in which the parentage of the biological father is sought to be adjudicated is governed by the provisions of Chapter 160 of the

4

Family Code.[2]  See Section 160.001.  A man is presumed to be the biological father of a child born during the marriage of the man and the child's biological mother.  Section 151.002(a)(1).  The presumption is rebuttable.  Section 151.002(b).  The biological mother may contest the presumption of biological fatherhood provided in Chapter 151 by expressly denying paternity of the child in her pleadings.  Section 160.101(a), (b).  When the mother denies the parentage of a man presumed to be the father under Chapter 151, she has the burden of rebutting the presumption of paternity by clear and convincing evidence.  Section 160.110(a).

The parent-child relationship between a man and a child may be established in ways other than establishing that the man is the biological father of the child.  For example, the relationship may be established by proving the man has adopted the child, see Section 151.001(a)(3); or by proof that the man consented to his wife's conception by assisted means.  See Sections 151.101, 151.102, 151.103.  Although consent by the man to an assisted conception is required to be in writing, it has been held that under narrow circumstances the parent-child relationship between a man and child may be established by the man's ratification of the assisted conception.  See K.B. v. N.B., 811 S.W.2d 634, 636-39 (Tex.App.--San Antonio 1991, writ denied).

Ratification is the adoption or confirmation by a person, with knowledge of all material facts, of a prior act which did not then legally bind that person and which that

_____

[2]Mona apparently resided in New Mexico at the time the parties were married. Neither party references or cites the law of New Mexico in their briefs.  We presume that any applicable New Mexico law is the same as Texas law.  See Holden v. Capri Lighting, Inc., 960 S.W.2d 831, 834 (Tex.App.--Amarillo 1997, no pet.).

person had the right to repudiate. See <u>Kunkel v. Kunkel</u>, 515 S.W.2d 941, 948 (Tex.Civ.App.--Amarillo 1974, writ ref'd n.r.e.). Ratification is a plea in avoidance and thus an affirmative defense which, absent trial by consent, is waived unless affirmatively pleaded. See <u>Land Title Co. of Dallas v. F.M. Stigler, Inc.</u>, 609 S.W.2d 754, 756 (Tex. 1980). Pleading the actual legal term, however, is not required, so long as notice is given. <u>See</u> <u>Earth Sciences, Co. v. Lindley Int'l, Inc.</u>, 650 S.W.2d 217, 218 (Tex.App.--San Antonio 1983, no writ) (ratification adequately pleaded where plaintiff alleged necessary elements despite not specifically using legal term of ratification). The critical factor in determining whether a principal has ratified an unauthorized act is the principal's knowledge of the transaction and the principal's actions once the principal acquired knowledge of the unauthorized act. See <u>F.M. Stigler, Inc.</u>, 609 S.W.2d at 756-57.

## C. Analysis

In the matter before us, Mona pled that the children were born during the marriage. She expressly stated in her pleadings that Randall was not the father of the twin boys and that parentage testing excluded him as the father. Randall's counter-petition pled that Randall and Mona were "the parents of the following [children] of this marriage . . . " and identified the twins. Neither party pled that the children were the product of artificial insemination or other assisted conception, nor that Randall consented to or ratified an assisted conception.[3]

---

[3]The parties agree on certain facts which are not entirely supported by evidence in the record of the hearing on the merits, such as the fact that the children were conceived via assisted conception methods.

6

At the final hearing of August 31, 2000, Mona was the first witness to testify. She testified that Randall was not the father of the children. She testified to Randall's lack of support during the "invetro-fertilization" [sic] and pregnancy of the children. She testified that "When we talked, if [Randall] had of chosen to use his own sperm they were going to be his kids. But up until now–," at which time Randall's counsel objected because the answer was nonresponsive. The trial court sustained the objection. The court then *sua sponte* instructed Mona and her counsel that the court was not going to listen to testimony that she thought the children were not Randall's. Despite Mona's further statement that "he had told me that it wasn't going to be his," the trial court stated that Randall had a legal right to make a claim, had now made it, and "that's passed."

Following presentation of the evidence, Mona's trial counsel was allowed to make a bill of exceptions. No testimony was presented, but counsel stated to the trial court that Mona desired to present evidence that (1) would have rebutted the presumption of paternity set out by Section 151.002; (2) the children were conceived via in vitro fertilization and not artificial insemination; and (3) the facts and circumstances surrounding the conception were different from the circumstances supporting findings of ratification in cases under consideration by the trial court, such as in K.B. v. N.B.

The trial court then made rulings from the bench to the effect that Randall was the father of the children and the divorce was granted. He set visitation and divided the property of the marriage. The court also ruled from the bench that (1) Randall did not "consent" as that term was used in Section 151.101, but he attempted to access the children by filing an answer and cross-action for divorce and that action acted as

7

ratification; (2) some evidence was presented that Randall ratified the assisted conception; and (3) the judge did not hear any evidence, and was not going to listen to any evidence about whether or not an attempt was made to get Randall to consent to the assisted conception.

Mona contested the presumption of biological fatherhood provided in Chapter 151 by expressly denying Randall's paternity of the children in her pleadings. See Section 160.101(a), (b). Once Mona denied the parentage of Randall, she had the burden of rebutting the presumption of paternity by clear and convincing evidence. See Section 160.110(a). Her testimony broached the subject of assisted conception and alluded to the fact that Randall at some point decided that children of an assisted conception from sperm other than his sperm would not be his children. Evidence of whether the children resulted from assisted conception, the timing of Randall's knowledge of such assisted conception and Randall's actions once he acquired knowledge of all material facts as to such conception would be relevant to the issue of whether he ratified such a conception. See F.M. Stigler, Inc., 609 S.W.2d at 756-57; K.B. v. N.B., 811 S.W.2d at 636-39.

At the time the trial court effectively instructed Mona not to present evidence to contest Randall's parentage of the children, Randall had pled only that the children were born of the marriage. He had not pled that he consented to assisted conception, that he ratified assisted conception or the elements of ratification. See F.M. Stigler, Inc., 609 S.W.2d at 757; Lindley Int'l, Inc., 650 S.W.2d at 218-19. Even if he had pled consent or ratification, pleadings are not evidence unless offered and admitted as such. See Myers v. Continental Panhandle Lines, 278 S.W.2d 365, 368 (Tex.Civ.App.--Amarillo 1954, no

8

writ). Moreover, generally, pleadings are not admissible as proof of their contents in favor of the pleader, but are used to prove material admissions against the interests of the pleader. Id. Assuming, *arguendo*, that a husband may use the doctrine of ratification offensively to support establishing of a parent-child relationship with children born of assisted conception, a husband's mere pleading that the parties are parents of children of the marriage and seeking conservatorship of the children does not conclusively establish the husband's ratification of the assisted conception. See K.B. v. N.B., 811 S.W.2d at 636-39; Myers, 278 S.W.2d at 368. Nor does such pleading conclusively establish such consent to assisted conception as is required by the Family Code.

Assuming, further, that the questions of Randall's consent to or ratification of assisted conception were properly before the trial court, Mona's pleading and testimony created fact questions on the issues. She was entitled to present relevant evidence on the matter. See TEX. R. EVID. 401, 402. The trial court abused its discretion in excluding evidence relevant to the issues. See TEX. R. EVID. 401, 402; Landon, 724 S.W.2d at 939-40.

Given the context of and the language used by the trial court in its instructions which effectively directed Mona's counsel not to present evidence as to Randall's actions and conduct in connection with the assisted conception, Mona was justified in making her proposed proof known to the trial court in such a cursory manner as she did. See TEX. R. EVID. 103(a)(2). The offer of proof is such that we cannot determine whether exclusion of Mona's evidence probably resulted in rendition of an improper judgment. We conclude, however, that the trial court's rulings probably prevented Mona from fully presenting her

9

proposed evidence and therefore probably prevented her from properly presenting her case on appeal.  See Tex. R. App. P. 44.1.

## CONCLUSION

Mona's third issue is sustained.  Because our determination as to the third issue is dispositive of the appeal, we do not address her other issues.  Tex. R. App. P. 47.1.  The judgment of the trial court is reversed and the cause is remanded for further proceedings.


Phil Johnson
Justice


Publish.

10